IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
GALVESTON DIVISION

| | | |
|---|---|---|
| **TARRIS L. WOODS, ET AL.,** | § | |
| *Plaintiffs*, | § | |
| | § | |
| **V.** | § | **CIVIL ACTION NO.: 3:15-CV-00051** |
| | § | **JURY REQUESTED** |
| **GALVESTON HOUSING AUTHORITY,** | § | |
| **ET AL.,** | § | |
| *Defendants*. | § | |

GHA DEFENDANTS' MOTION TO DISMISS
PLAINTIFFS' FIRST AMENDED COMPLAINT

**TO THE HONORABLE JUDGE OF SAID COURT:**

COME NOW Defendants **GALVESTON HOUSING AUTHORITY ("GHA")**, **IRWIN "BUDDY"**

**W. HERZ**, **ANTHONY BROWN**, **ANN MASEL**, **J. T. EDWARDS**, and **VIRGINIA FRENCH** (individuals

collectively referred to as "GHA Board") (GHA and the individuals collectively referred to "GHA

Defendants"), Defendants in the above-described and numbered cause, file this their Motion to

Dismiss Plaintiffs' First Amended Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6),

and in support thereof would respectfully show unto the court as follows:

**I.**

**INTRODUCTION**

Plaintiff Tarris Woods ("Woods") is a Galveston City Council member and a HUD-

subsidized landlord.[1]  The other Plaintiffs are Woods' tenants.[2]  GHA is a public housing authority

that has Housing Assistance Payment ("HAP") contracts with Woods, governing the relationships

between GHA and Woods.[3]  It is undisputed that the HAP contracts provide for inspections of the

---

[1] See Document No. 23 at ¶¶ 1, 3.
[2] See Document No. 23 at ¶¶ 4-7.
[3] *See* Document No. 23 at ¶¶ 1, 17-18.

HUD-subsidized properties.[4]  Plaintiffs complain, however, that GHA's decision to video record these consensual inspections violated their constitutional rights to be free from unreasonable searches under the Fourth Amendment and their privacy rights under the Fourteenth Amendment.[5] Woods' also complains that his right to equal protection was violated because he claims other HUD-subsidized landlords were not subjected to video recorded inspections,[6] and that his due process rights were violated because the video recorded inspections caused a tenant to vacate the property, resulting in a loss of rents.[7]  Finally, Plaintiffs allege the GHA Board violated the Texas Open Meetings Act ("OMA") by approving the video recording without an agenda item.[8]

As set forth below, Plaintiffs' unreasonable search and invasion of privacy allegations fail to state a claim because the Supreme Court has acknowledged that video recording consensual inspections does not implicate any constitutional rights.  Woods' due process allegations fail to state a claim because he has not alleged that the government deprived him of any right, or that he was entitled to any due process which he did not receive.  Similarly, Woods' equal protection allegations fail to state a claim because he has not adequately alleged a "class-of-one" claim based on purported vindictiveness, and because he was not treated materially differently from any other class.  Finally, if the court retains jurisdiction over Plaintiffs' state law OMA claim after dismissing Plaintiffs' federal claims, same should be dismissed because Plaintiffs seek only money damages, which are unrecoverable.

---

[4] *See* Document No. 23 at ¶ 17.
[5] *See* Document No. 23 at ¶¶ 1, 17, 21-24.
[6] *See* Document No. 23 at ¶¶ 1, 17-18, 25-26.
[7] *See* Document No. 23 at ¶¶ 1, 17-18, 25-26.
[8] *See* Document No. 23 at ¶¶ 1, 19, 29.

## II.
### BACKGROUND

As noted above, Woods is a Galveston City Council member.  Notably, however, Woods is also a frequent civil litigant, on both sides of the docket.  As a plaintiff, he has sued the City of Galveston on numerous occasions, and he has had more civil rights cases dismissed than most *pro se* prisoners.  *See, e.g., Tarris L. Woods v. City of Galveston, et al.*, 5 F.Supp.2d 494 (S.D.Tex. 1998) (dismissal with prejudice after Woods alleged he was placed on disability for "a paranoid disorder arising from racial comments made by white coworkers"); *Tarris Woods v. City of Galveston, et al.*, No. 14-06-01022-CV, 2008 WL 2520802 (Tex. App.—Houston [14th Dist.] Jun. 24, 2008) (dismissal with prejudice).  Woods has also apparently been sanctioned by the Texas Ethics Commission for both substantive and technical violations of the Texas Elections Code ("TEC").  *See* Tex. Ethics Comm'n Order No. SC-2811379 (2009).  Ironically, Woods has also unsuccessfully accused elections officials of violating the TEC, notwithstanding his own established violations. *See, e.g., Woods v. Legg*, 363 S.W.3d 710 (Tex. App.—Houston [1st Dist.] 2011).  The Court should take judicial notice of these prior judgments involving Woods.

This case is no different from Woods other civil rights cases which have been dismissed.  His relevant allegations, which fail to state a claim, are as follows:[9]

1.      GHA administers federal housing programs according to HUD regulations;

2.      Woods owns several houses and participates in a federal housing program;

3.      Woods has Housing Assistance Payment ("HAP") contracts with GHA, which govern the relationships between Woods and GHA;

4.      the HAP contracts provide for inspections to assure quality of the housing, although they are silent with respect to video recording inspections;

---

[9] The parties sharply disagree about the facts alleged by Plaintiffs.  However, for purposes of this motion only, the facts as alleged by Plaintiffs are taken as true.

5.      the other Plaintiffs are Woods' tenants;

6.      GHA advised Woods on September 11, 2014 that inspections of his properties would be video recorded;

7.      in response to Woods' request for clarification, GHA Deputy Executive Director Mona Purgason advised Woods on September 24, 2014 that any refusal of the video recorded inspections would be treated as a refused inspection, which would be tantamount to a failed inspection, the result of which could constitute a breach of the HAP contract, subjecting the HAP contract to suspension or termination;

8.      although there is no mechanism for an appeal to the GHA Board, Woods requested that the GHA Board review the decision to require video recorded inspections, and the Board did not reverse the decision;

9.      GHA inspectors thereafter conducted video recorded inspections of Woods' properties; and

10.     one of Woods' tenants allegedly vacated the rental unit because of the video recorded inspections, which Woods claims resulted in lost rental income.

## III.
### STANDARD OF REVIEW

Federal Rule of Civil Procedure 12(b)(6) authorizes dismissal of a complaint which fails to state a claim upon which relief can be granted.  In *Bell Atlantic Corp. v. Twombly*, the United States Supreme Court introduced a new, more stringent, "plausibility" standard as the notice standard for pleadings.  550 U.S. 544, 554-56 (2007).

Federal Rule of Civil Procedure 8(a)(2) requires only "a short and plain statement of the claim showing that the pleader is entitled to relief," in order to "give the defendant fair notice of what the ... claim is and the grounds upon which it rests." While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the "grounds" of his "entitle[ment] to relief" requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do.  Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact).

*Id.* (internal citations omitted).

- 4 -

A complaint is subject to a Rule 12(b)(6) dismissal if the plaintiff fails to allege sufficient facts upon which a recognized legal claim can be based.  *See Rubinstein v. Collins*, 20 F.3d 160, 173 (5th Cir. 1994).  The court takes all factual allegations contained in the complaint as true and resolves any ambiguities or doubts regarding sufficiency of the claim in favor of the plaintiff. *Jefferson v. Lead Industrial Assoc. Inc.,* 106 F.3d 1245, 1250 (5th Cir. 1997).  However, vague legal accusations masquerading as factual conclusions will not preclude dismissal.  *Id.*

### IV.
### ARGUMENTS & AUTHORITIES

*1.*     *Unreasonable Search Claims Fail as a Matter of Law*

   *A.*   *"Searches" at Issue were Consensual*

The only alleged "searches" in this case are inspections conducted by GHA—a public housing authority—of properties receiving HUD-subsidized rent.  Such inspections are authorized by written agreement and are not "searches" within the meaning of the Fourth Amendment.  *See, e.g.*, *Wyman v. James*, 400 U.S. 309, 317-18, 324, 326 (1971) (when home inspection is required to receive aid benefits, there is no question of constitutional magnitude associated with a home inspection; individual can always refuse the inspection and refuse the aid); *see also Kendall v. Oxford Housing Auth.*, No. 3:93CV124–S–D, 1994 WL 1890896, at *1 (W.D. Miss. Nov. 25, 1994) (inspection by housing authority does not involve constitutional question because lease authorizes inspections).  Put another way, consent is a defense to any claim of an unreasonable Fourth Amendment search, and by entering into the HAP contract and accepting public aid, Plaintiffs consented to the inspections.  In fact, Plaintiffs allege that the HAP contract expressly authorizes inspections.  Accordingly, the Fourth Amendment is not implicated.

The authorities Plaintiffs relied on when opposing Defendants' Motion to Dismiss Plaintiffs'

Original Complaint are inapplicable:

(1) *Camara v. Municipal Court of the City and County of San Francisco*, 387 U.S. 523 (1967): where there has been no consent, contractual or otherwise, an individual may not be subjected to criminal penalties for refusing to allow a municipal building code inspection without a warrant or exigent circumstances;

(2) *New Jersey v. T.L.O.*, 469 U.S. 325 (1985): where there has been no consent, contractual or otherwise, high school officials may not search a student's purse for criminal contraband, on school premises, unless in compliance with the Fourth Amendment;

(3) *Marshall v. Barlow's, Inc.*, 436 U.S. 307 (1978): where there has been no consent, contractual or otherwise, OSHA cannot search a place of employment without a search warrant or exigent circumstances;

(4) *Club Retro, L.L.C. v. Hilton*, 568 F.3d 181 (5th Cir. 2009): where there has been no consent, contractual or otherwise, local law enforcement officers may not conduct an armed SWAT team raid of a bar without a warrant or exigent circumstances;

(5) *Russo v. Massullo*, 927 F.2d 605 (6th Cir. 1991) (not selected for publication): where there has been no consent, contractual or otherwise, local law enforcement officers may not conduct an armed raid of a bar without a warrant or exigent circumstances;

(6) *Swint v. City of Wadley*, 51 F.3d 988 (11th Cir. 1995): where there has been no consent, contractual or otherwise, local law enforcement officers may not conduct an armed raid of a bar without a warrant or exigent circumstances;

(7) *Delia v. City of Rialto*, 621 F.3d 1069 (9th Cir. 2010): where there has been no consent, contractual or otherwise, internal affairs investigator could not order a firefighter to retrieve items from inside his home without a warrant or exigent circumstances;

(8) *Florida v. Bostick*, 501 U.S. 429 (1991): it is not per se unreasonable for law enforcement officers to ask bus patrons for consent to search bags; and

(9) *United States v. Winsor*, 846 F.2d 1569 (9th Cir. 1988): when law enforcement officers commanded every guest in a hotel to open the door in a search for a bank robber, they did so without probable cause, and any evidence seized as a result of such a search was inadmissible.

These cases are distinguished because Plaintiffs consented to the inspections when they entered into

HAP contracts and leases for taxpayer subsidized housing.  Further, the inspections are not performed by law enforcement, they are scheduled in advance, and there is no criminal investigation. As set forth above, the applicable authority holds that the Fourth Amendment is not even implicated on the facts of this case due to contractual consent.  *See Wyman, supra*.

Further, Plaintiffs' argument that their consent to the video recorded inspections was invalid because they only agreed to same under threat of loss of HAP contract payments is a red herring.  For example, the *Delia* opinion—relied on by Plaintiffs—held that a firefighter made the subject of an internal affairs investigation did not validly consent when he was ordered to retrieve items from his home, since refusal would have resulted in loss of employment.  However, in the present case, Plaintiffs accepted the requirement of inspections before becoming eligible for taxpayer subsidized housing; that was not a condition foisted on them after-the-fact.  *See Wyman, supra*.  For the foregoing reasons, the inspections at issue did not violate the Fourth Amendment.

> B.  _Video Recording of Authorized Inspections Is Lawful_

The fact that the inspections were video recorded does not change the analysis.  The videos depict nothing more than what the inspector visually observed.  More specifically, although courts have discouraged "secret" video recordings that tend to invade individuals' reasonable expectations of privacy, when the video recording is part of "quality control" efforts, the Supreme Court has acknowledged that the use of video is reasonable.  *See, e.g., Wilson v. Layne*, 526 U.S. 603, 613 (1999) (reasonable to videotape home entries as part of a "quality control" effort to ensure that rights of homeowners are being respected, or even to preserve evidence); *accord Floyd v. City of N.Y.*, 959 F.Supp.2d 668, 685 (S.D.N.Y. Aug. 12, 2013) (video recordings (1) provide objective records of interactions, (2) encourage lawful and respectful behavior, and (3) diminish mistrust of authorities); *see also Ohio v. Robinette*, 519 U.S. 33, 35 (1996) (use of a "mounted video camera" to record

details of a routine traffic stop is reasonable).  The video recording in the present case was disclosed in advance and served as a quality control check, establishing its reasonableness.  Accordingly, Plaintiffs fail to state a claim.

**2.**     **_Invasion of Privacy Claims Fail as a Matter of Law_**

The Supreme Court has recognized certain "zones of privacy" under the constitution.  For example, the First Amendment protects the privacy of beliefs and expressions, *see Stanley v. Georgia*, 394 U.S. 557, 564–68 (1969), the Third Amendment protects the privacy of the home from the quartering of soldiers, the Fourth Amendment protects against unreasonable searches, *see Zaffuto v. City of Hammond*, 308 F.3d 485, 488 (5th Cir. 2002), and the Ninth and Fourteenth Amendments protect fundamental privacy for narrowly defined "important decisions" generally relating to marriage, procreation, contraception, family relationships, child rearing, and education, *see, e.g., Roe v. Wade*, 410 U.S. 113, 152–52 (1973).  Although Plaintiffs cite to each of those constitutional amendments, the only privacy interest that is conceivably implicated in the present case arises under the Fourteenth Amendment, which protects an individual's "interest in avoiding disclosures of personal matters."  *See Whalen v. Roe*, 429 U.S. 589, 598–99 (1977).

For any disclosure of private information to be actionable, there must be a public disclosure of that information, the disclosure must be more than *de minimis*, and the disclosure must either shock or humiliate.  *See, e.g., Alexander v. Peffer*, 993 F.2d 1348, 1350 (8th Cir. 1993).  In the present case, Plaintiffs have not even alleged any public disclosure of any personal matter, and there is no basis to argue that the video recordings may be subject to the Texas Public Information Act ("PIA") because the video recordings are excluded from the PIA.  *See, generally,* TEX. GOV'T CODE § 552.101.  In addition to the lack of any disclosure, Plaintiffs also have not alleged that any non-*de minimis* facts were disclosed, or that any non-existent disclosure had the effect of inducing shock or

humiliation.  Accordingly, Plaintiffs fail to state a claim.

3.      **_Woods' Due Process Claim Fails as a Matter of Law_**

In his complaint, Woods alleges that the video recording of inspections caused one of his tenants to vacate, resulting in lost rental income.[10]  However, as set forth above, Woods and his tenants consented to the inspections, and there is no legally significant difference when the inspections are video recorded.  Woods had a right to receive rent when had a tenant in compliance with applicable HAP contracts, rules, and regulations.  That Woods claims to have lost rents when he lost a tenant does not raise any due process concern, and because Defendants' actions were legal, Woods was not deprived on any protected interest.

Even if there were some argument that Woods had been deprived of some right, Woods has not alleged any due process to which he would have been entitled.  For example, he claims GHA's counsel informed him of the video recordings.  When he complained, he claims GHA's executive director confirmed that the inspections would be video recorded, or he would be deemed to have refused an inspection.  Finally, he claims two ranking members of the GHA Board even confirmed that the inspections would be video recorded.  There is no allegation that Woods was entitled to any further appeal, explanation, or other due process, or that he was deprived of same.  Accordingly, Woods fails to state a claim.

4.      **_Woods' Equal Protection Claim Fails as a Matter of Law_**

In his complaint, Woods alleges that the video recording of inspections violated his right to equal protection because other landlords were not required to have video recorded inspections, and he claims  the basis for the allegedly differential treatment was "sheer vindictiveness, maliciousness,

---

[10] *See* Document No. 23 at ¶ 18.

animosity or spite," and "due to an ongoing feud."[11]   However, he provides no factual detail relating to the basis of those allegations, knowing that any good faith allegations of same would establish a rational basis for the video recordings.   Unwittingly, however, Woods' failure to allege any factual basis defeats his claim because he has not alleged sufficient facts to make his claim plausible.   More specifically, to plead a *prima facie* equal protection claim based on a class-of-one, Woods must allege defendants "treated him differently from others similarly situated and that there is no rational basis for the difference in treatment."   *See Village of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000).   As the Fifth Circuit has held, he will ultimately have to "carry the heavy burden of negativing any reasonably conceivable state of facts that could provide a rational basis for [defendants] differential treatment."   *Lindquist v. City of Pasadena*, 525 F.3d 383, 387 (5th Cir. 2008).

In practice, the Supreme Court and the Fifth Circuit have not directly addressed class-of-one claims based on personal vindictiveness, other than holding that specific factual allegations relating to improper motives are required.   *See, e.g., Village of Willowbrook v. Olech*, 528 U.S. 562 (2000) (exaction case relied on by Plaintiffs) (class-of-one claims are possible, but finding objective factual allegations established a materially different treatment, such that "[we] do not reach the alternative theory of 'subjective ill will'" based on prior litigation history between the parties); *Allegheny Pittsburgh Coal Co. v. County Comm'n of Webster County*, 488 U.S. 336 (1989) (taxation case relied on by Plaintiffs) (not addressing any allegation of personal vindictiveness); *Sioux City Bridge Co. v. Dakota County*, 260 U.S. 441 (1923) (taxation case relied on by Plaintiffs) (remanding for consideration of whether there was an equal protection claim, which would require "something more—something which in effect amounts to an intentional violation of the essential principle of

---

[11] *See* Document No. 23 at ¶¶ 18, 25.

practical uniformity"); *Parude v. City of Natchez*, No. 02-61046, 72 F.App'x 102, 104–05 (5th Cir. Jul. 29, 2003) (not selected for publication) (noting the Fifth Circuit has not heard class-of-one cases on personal vindictiveness); *see also, e.g., Lindquist v. City of Pasadena*, 656 F.Supp.2d 662, 684–85 & n.4 (S.D. Tex. 2009), *aff'd* 669 F.3d 225 (5th Cir. 2012) (pleading standard); *Mata v. City of Kingsville*, 275 F.App'x. 412, 415 (5th Cir. 2008) (same).

In the present case, as set forth above, the video recording of inspections is constitutionally immaterial, and Woods therefore has not been treated differently from any other landlord, in any legally significant manner.  Because Woods has not been treated any differently, he cannot establish the most basic element of any equal protection claim.  *See, e.g., Cornerstone Christian Schools v. Univ. Interscholastic League*, 563 F.3d 127, 139 (5th Cir. 2009) (quoting *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432,439 (1985)) ("inquire about equal protection of the laws only if the challenged government action classifies or distinguishes between two or more relevant groups.").

Further, even if Woods had been treated materially different from others—which he has not—Woods has not alleged any *facts* to establish the basis of any alleged vindictiveness the GHA Defendants would have toward him, other than generically alleging there was a feud on undisclosed matters and of undisclosed magnitude.  Given the lack of factual allegations in Woods' complaint, he has failed to state an equal protection claim.

**5.     _Individual Defendants / GHA Board Entitled to Qualified Immunity_**

Even if Plaintiffs' claims were not otherwise barred—which they are, as set forth above—all Plaintiffs claims against the individual GHA Board Members would be barred by qualified immunity.  Notably, Plaintiffs bear the burden to overcome qualified immunity.  *McClendon v. City of Columbia*, 305 F.3d 314, 323 (5th Cir. 2002).

The doctrine of qualified immunity shields government officials "from liability for

civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald,* 457 U.S. 800, 818 (1982). In *Saucier v. Katz,* 533 U.S. 194, (2001), the Supreme Court set forth a two-step inquiry for resolving government officials' qualified immunity claims: first, a court must decide whether the facts alleged or shown are sufficient to make out a violation of a constitutional right; second, the court must decide whether the right at issue was "clearly established" at the time of the defendant's alleged misconduct. *Id.* at 201. If the official's conduct violated a clearly established constitutional right, then qualified immunity is not applicable.

*Lockett v. New Orleans*, 607 F.3d 992, 997-98 (5th Cir. 2010). At the first step, Plaintiffs cannot point to any applicable authority indicating that video recording an otherwise lawful inspection was unlawful or a violation of any person's constitutional rights. Accordingly, ordering video recorded inspections does not violate clearly established statutory or constitutional rights.

Next, whether the defendant's conduct violated a clearly-established right "turns on the objective legal reasonableness of the action, assessed in light of the legal rules that were clearly established at the time it was taken." *Pearson v. Callahan*, 555 U.S. 223, 129 S.Ct. 808, 822 (2009). At this second step, Plaintiffs' pleadings fail to sufficiently allege actions that were objectively unreasonable in the circumstances. *See Pearson*, 555 U.S. 223. More specifically, "if reasonable public officials could differ on the lawfulness of the defendant's actions, the defendant is nonetheless entitled to qualified immunity." *Johnston v. City of Houston*, 14 F.3d 1056, 1059 (5th Cir. 1994). Accordingly, the qualified immunity standard gives ample room for mistaken judgments by protecting "all but the plainly incompetent or those who knowingly violate the law." *Id.*; *see also County of Sacramento v. Lewis,* 523 U.S. 833, 848-49 (1998); *Goodson v. City of Corpus Christi*, 202 F.3d 730, 736 (5th Cir. 2000); *Sanchez v. Swyden*, 139 F.3d 464, 469 (5th Cir. 1998). Based on Plaintiffs' pleadings, GHA and the GHA Board approved the non-surreptitious video recording of housing inspections, when those housing inspections were expressly authorized by the governing HAP contracts. Also according to Plaintiffs, GHA and the GHA Board made that decision with the

benefit of three licensed attorneys. Nothing about the foregoing allegations is objectively unreasonable, and Plaintiffs have failed to plead facts which would overcome the individual GHA Board Members' qualified immunity defense.

Plaintiffs next argue that the GHA Board members are not GHA employees and that they therefore cannot be entitled to qualified immunity. Such an argument, however, is not supported by any authority: Plaintiffs cite none, and they choose to ignore well-settled authority to the contrary. *See, e.g., Hick v. Bexar County*, 973 F.Supp. 653, 685-86 (W.D.Tex. 1997). For the reasons set forth above, the individual GHA Board members are entitled to qualified immunity, and Plaintiffs' claims should be dismissed.

### 6.     *Open Meetings Act Claim Fails as a Matter of Law*

Finally, Plaintiffs complain that the GHA Board made a decision to video record inspections without posting the issue on an agenda, and outside of a public meeting under the OMA.[12] However, as set forth below, and even if the Court exercises jurisdiction over this state-law claim after dismissing Plaintiffs' constitutional claims, this claim should be dismissed. First, there is no allegation that the GHA Board made any decision that was required to be made by the GHA Board, as opposed to the Deputy Executive Director. Further, even if the GHA Board made a decision to video record the inspections, and even if such a decision was in violation of the OMA—which is denied—the remedy would be simply to void that decision. *See, e.g.,* TEX. GOV'T CODE § 551.141. If any such decision were voided, then the Deputy Executive Director's decision to video record the inspections would be left in place, with no formal mechanism to appeal same. Accordingly, this claim has no merit. Further, this claim should be dismissed because Plaintiffs seek only money damages in this suit, and money damages are not recoverable. *See* TEX. GOV'T CODE § 551.142.

---

[12] *See* Document No. 1 at ¶ 31.

## V.
### PRAYER

**WHEREFORE, PREMISES CONSIDERED**, GHA Defendants— Galveston Housing Authority, Irwin "Buddy" W. Herz, Anthony Brown, Ann Masel, J. T. Edwards, and Virginia French—pray that their Motion to Dismiss Plaintiffs' First Amended Complaint be granted in all respects, that Plaintiffs' claims be dismissed in their entirety, and for such other and further relief to which GHA Defendants are justly entitled.

Respectfully submitted,

**Larry J. Simmons – Attorney-in-Charge**
State Bar No. 00789628
Southern District of Texas Bar No. 18830
ljsimmons@germer.com - Email
**B. Eliot New – Of Counsel**
State Bar No. 24060328
Southern District of Texas Bar No. 884608
enew@germer.com – Email
**GERMER PLLC**
P.O. Box 4915
Beaumont, TX 77704
(409) 654-6700 – Telephone
(409) 835-2115 – Facsimile

**COUNSEL FOR DEFENDANTS**

### CERTIFICATE OF SERVICE

I hereby certify that on the 28th day of May, 2015, a true and correct copy of the foregoing instrument was forwarded to all counsel of record pursuant to the Federal Rules of Civil Procedure.

**Larry J. Simmons**